REYNOLDS *v.* TASSIN.

4-7847                                    192 S. W. 2d 984

Opinion delivered March 11, 1946.

*A. M. Coates,* for appellant.

*Dinning & Dinning,* for appellee.

MILLWEE, J. This appeal involves the right to the custody of Bobby Joe Reynolds, the five-year-old son of appellant and appellee. The parties were married on May 13, 1934, immediately after appellant obtained a divorce from his first wife, with whom he had lived since 1916. Appellant became engaged in commercial fishing soon after the marriage and the couple resided in a small houseboat on the river until the death of their first child, a daughter. They then moved back to West Helena where Bobby Joe was born October 18, 1940.

The parties separated in May, 1941, and appellee obtained a decree of divorce on May 28, 1941, under the terms of which she was awarded custody of the child. In June, 1941, appellant remarried his first wife. The original divorce decree contained no provision for support of the child, but, upon application made by appellee, an order was entered November 22, 1941, requiring appellant to pay appellee $2.50 per week for the child's support. Appellee became employed at a hosiery mill earning $7 per week and placed the child in the home of relatives who lived in St. Francis county. On January 8, 1942, appellant filed his petition for modification of the

original decree which was heard on the date filed and custody of the child was changed from appellee to appellant. In May, 1942, appellee married A. J. Tassin of Marksville, Louisiana.

Appellant left Helena in the early part of 1943 for California where he obtained employment in a war plant, leaving the child with the stepmother. Appellee and her present husband visited in Helena in February, 1943, and advised the stepmother of their intention to make application for a change of custody of the child. On February 25, 1943, appellee wrote a letter to appellant in which she stated that such application would be made on March 22, 1943. On or about March 1, 1943, the child and stepmother went to appellant in California and resided in a hotel for two or three weeks until government housing became available.

Appellee filed petition for modification of the order of January 8, 1942, and an order was entered on March 22, 1943, restoring custody of Bobby Joe to her. This order recites that appellant "although duly notified, failed to appear." The order also directed appellee to give bond for $250, the condition of which required future submission to the jurisdiction and orders of the court. At the time of this order, appellant and the child were in California. In September, 1944, appellee and her husband, A. J. Tassin, went to California where she recovered custody of the child from appellant through *habeas corpus* proceedings. Mr. and Mrs. Tassin returned with the child to their home in Marksville, Louisiana.

On October 17, 1944, appellant filed his petition in the Phillips chancery court to vacate the order of March 22, 1943, alleging that he had no notice of the proceedings resulting in- the order of that date, and that said order was obtained through misrepresentation and fraud practiced upon the court. He prayed that the order be vacated and the custody of the child restored to him. Appellee filed a response to this petition on October 18, 1944, and, at a hearing before the chancellor in vacation, the motion to vacate the order of March 22, 1943, was denied. How-

ever, the court treated the motion to vacate as one to modify the March 22nd order to such an extent as to restore custody of the child to appellant, and the parties were permitted to file further proof for a hearing upon such motion on its merits.

The parties proceeded to take testimony on the question of a modification of the order of March 22, 1943, and the decree appealed from was entered on September 15, 1945. This decree modified the order of March 22, 1943, by awarding custody of the child to appellee for the nine months school term of each year, and to appellant for the vacation period, on condition that he pay appellee $5 per week for the child's support while in the custody of the mother. Both parties were required to give bond to abide by orders of the court respecting the custody of the child. Both parties have appealed from this decree.

It is first insisted by appellant that the trial court erred in its refusal to vacate the order of March 22, 1943, which modified the order of January 8, 1942, because appellant had no notice of the hearing on appellee's petition for such modification. The record reflects that a hearing was had on appellant's motion to vacate the order of March 22, 1943, on October 18, 1944. This order, which denied appellant's motion to vacate, recites that all parties and their counsel were present and that the cause was submitted upon evidence heard in open court. This evidence was not preserved in this record, and under the well settled rules of this court, it must be presumed that the omitted evidence sustains the finding of the chancellor on this issue. *Harmon* v. *Harmon,* 152 Ark. 129, 237 S. W. 1096; *Hill* v. *Brittian,* 185 Ark. 1029, 50 S. W. 2d 974; *Wardlow* v. *McGhee,* 187 Ark. 955, 63 S. W. 2d 332; *McGowan, et al.,* v. *Burns, et al.,* 190 Ark. 1177, 77 S. W. 2d 970. If the court had sustained the motion of appellant to set aside the decree of March 22, 1943, this would not have resulted in a dismissal of appellee's petition for modification of the order of January 8, 1942, but it would have been the duty of the court to order a new trial of the cause. *Hunton* v. *Euper,* 63 Ark. 323, 38 S. W. 517.

All parties were before the court in the present proceedings, and the court had continuing jurisdiction acquired in the original divorce suit to make such orders pertaining to custody as the welfare of the child demanded.

After the chancellor denied the motion to vacate the decree of March 22, 1943, he treated the motion as one to modify said decree and permitted the parties to take proof by depositions on this motion. A large volume of testimony was taken, and both parties rely on the rule often announced by this court which is set out in *Weatherton* v. *Taylor,* 124 Ark. 579, 187 S. W. 450, as follows: "A decree fixing the custody of the child is, however, final on the conditions then existing, and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child." Appellant argues that the testimony fails to disclose a change in the conditions surrounding the welfare of the child since the order of January 8, 1942, when custody was awarded to him. Appellee contends, on the other hand, that there has been no change in such conditions since March 22, 1943, when she regained the right to custody of the child.

Regardless of whether the present proceeding be treated as one to modify the order of January 8, 1942, or the order of March 22, 1943, and, regardless of the regularity of prior proceedings, the first and paramount consideration of the court is the welfare of the child. The rule which this court has repeatedly announced is stated in *Kirby* v. *Kirby,* 189 Ark. 937, 75 S. W. 2d 817, as follows: "It is the well settled doctrine in this state that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity."

Without attempting a detailed recital of the testimony, it may be said that both parties in the past, by

reason of poverty or depravity, have failed to provide the physical care and moral training essential to the well being of their child. This was not true, however, at the time of the hearing herein, and for some time prior thereto. Both parties now have comfortable homes and have shown a proper interest in the welfare of the child. The interest also manifested by the stepmother and stepfather is to be commended. Several witnesses who resided near appellant, while the child was in his custody in California, testified to the splendid care and attention given the child by the stepmother. The stepfather is employed in the agricultural program of the government at a good salary and owns a comfortable farm home equipped with modern conveniences within four miles of churches and good schools to which regular bus transportation is furnished. The mother is no longer faced with the impoverished conditions which, she says, forced her to place the child in the care of relatives in 1942. Bobby Joe is only five years of age, and this court has always been reluctant to deprive a child of tender years of the care and affection of his mother. *Beene* v. *Beene,* 64 Ark. 518, 43 S. W. 968; *Meffert* v. *Meffert,* 118 Ark. 582, 177 S. W. 1; *Gibson* v. *Gibson,* 156 Ark. 30, 245 S. W. 32; *Taylor* v. *Taylor,* 163 Ark. 229, 259 S. W. 395; *Blain* v. *Blain,* 205 Ark. 346, 168 S. W. 2d 807.

Appellant resides in Helena where he, too, maintains a suitable home for the proper care and training of the child. He is considerably handicapped in his right of visitation with his son by reason of the distance between Helena and Marksville, Louisiana, the home of appellee. The trial court awarded custody to the mother for the school term of nine months each year, and to the father for the vacation period of three months. When the testimony is viewed from the standpoint of the welfare and best interest of the child, we are unable to say that the decree is against the preponderance of the evidence. It follows that the decree will be affirmed, both on appeal and cross-appeal.