# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**F I L E D**

**September 21, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

ANTHONY BRYAN JENNETTE, )
)
    Plaintiff/Appellant, )
)
                             )     Appeal No.
VS.                          )     01-A-01-9810-CH-00549
)
                             )     Dickson Chancery
TERESA LYNN JENNETTE,     )     No. 3441-94
)
    Defendant/Appellee. )

APPEALED FROM THE CHANCERY COURT OF DICKSON COUNTY
AT CHARLOTTE, TENNESSEE

THE HONORABLE ROBERT E. BURCH, JUDGE

JENNIFER DAVIS ROBERTS
106 Center Avenue
P. O. Box 944
Dickson, Tennessee 37055
    Attorney for Plaintiff/Appellant

KARLA C. HEWITT
211 Donelson Pike, Suite 4
Nashville, Tennessee 37214
    Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# **O P I N I O N**

In this divorce case the husband appeals the trial court's division of marital property and the order of child support. We affirm the trial court's order.

## I.

The parties married in 1977, had two children, and separated in 1994, when the husband went to live with another woman. Prior to the separation the parties lived in a basement home on property deeded to them jointly by the wife's parents. Mr. Jennette worked as a diesel mechanic for a while and then in an excavating company owned jointly with his father and brothers – where he worked at the time of the separation. In January of 1997 he left the family business and went to work for a sole proprietorship that did utility and grading contracting. In February of 1997, Mr. Jennette formed a limited liability company called "Sitetech." The articles of organization showed that there were four members of the company. Although Mr. Jennette disclaimed any interest in the company, he listed himself as a partner in the firm in a financial statement filed in March of 1998.

Mr. Jennette also acquired interests in other property after the separation. In fairness to him we would say that the largest share of his assets was generated after the separation with very little contribution from Mrs. Jennette.

The court awarded Mrs. Jennette a divorce and divided the marital property between the parties. The court found that Mr. Jennette did have an interest in Sitetech and that it was marital property. He awarded that interest to Mr. Jennette but ordered him to pay Mrs. Jennette $41,566.00 (twenty percent

of the husband's interest) as her share. The court also divided the other real estate the parties jointly owned, and ordered Mr. Jennette to pay Mrs. Jennette $24,225.00 in order to equalize the division. The court awarded each party the personal property they had in their possession and ordered Mr. Jennette to pay Mrs. Jennette $10,000 to compensate her for the imbalance. An insurance policy on Mr. Jennette's life had a cash value of $6,500. The court awarded Mr. Jennette the policy, but the court ordered him to pay one-half of the cash value to Mrs. Jennette. The total cash obligation from Mr. Jennette to Mrs. Jennette added up to $79,041.

At the time of the final hearing, the parties' oldest child had turned eighteen. The court set the child support for the remaining child at $888.00 per month. The court calculated the amount based on Mr. Jennette's annual income of $72,120 from his Sitetech salary, his other partnership income, and rental income.

## II.

### THE PROPERTY DIVISION

#### A. ASSETS ACQUIRED AFTER THE SEPARATION

Mr. Jennette starts his appeal with a complaint that the court awarded Mrs. Jennette a portion of the property acquired after the separation. He quickly concedes that the court properly classified the property as marital property because the statute defines marital property as "all real and personal property . . . acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing . . . ." Tenn. Code Ann. § 36-4-

121(b)(1)(A). But he asserts that the court failed to consider all the factors listed in the statute to determine if the division is equitable. The listed factors are:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann.§ 36-4-121(c).

Specifically, Mr. Jennette asserts that factor number five is significant because Mrs. Jennette did not contribute to the acquisition, preservation, or appreciation of the property. Mrs. Jennette relies on the remaining part of factor number five that gives a spouse credit for services as homemaker, wage earner or parent.

-4-

The record shows that from the time of the separation until May of 1996, Mr. Jennette did not contribute anything to the support of his family. It follows that Mrs. Jennette was the sole homemaker for the family and provided all the support for the parties' children. The basement home had a flat roof which leaked in numerous places even before Mr. Jennette left. It took a court order in February of 1998 to get him to make the necessary repairs. During that time, Mr. Jennette was making investments and acquiring the interests which he claims as his own. We think even factor number five gives some strength to Mrs. Jennette's interest in the marital property.

## B. SITETECH

The trial judge found that Mr. Jennette had an interest in Sitetech worth $207,833, and awarded Mrs. Jennette twenty percent of that figure. Mr. Jennette disclaims any interest in that business at all.

The record shows that in January of 1996, Mr. Jennette went to work for Dale Murphy in Mr. Murphy's contracting business. The business was being operated as a sole proprietorship. On February 19, 1996, Mr. Jennette formed the limited liability company which took over the business. The articles of organization list Mr. Jennette as the organizer, and he chose the lawyers and accountants for the company. He claims to be an employee, but the company does not withhold taxes from the money he draws. He signed a note with Dale Murphy in June of 1997 borrowing money for Sitetech. He signed the operating agreement organizing the company as one of the members.

The most telling piece of circumstantial evidence is a financial statement Mr. Jennette filed with a bank in March of 1998. He listed his interest

in Sitetech, LLC as an asset, showing a forty-nine percent interest worth $450,000.

There were numerous inconsistent statements in Mr. Jennette's trial testimony. At the close of all the proof, the trial judge completely discounted Mr. Jennette's testimony, saying:

> From that ruling, it should become obvious that the Court does not believe Mr. Jennette's testimony concerning his income and the value of his property. I am more persuaded by the paper trail that was left. The Court is convinced that Mr. Jennette has been untruthful before this Court and quite frankly discounts his testimony.

The trial judge's finding with respect to the credibility of witnesses is entitled to great weight in the appellate courts. *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47 (Tenn. 1959); *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488 (Tenn. App. 1975). When Mr. Jennette's denial of an interest in Sitetech is disregarded, all the evidence points toward a conclusion that he owned a valuable interest in the company. We think the evidence preponderates in favor of the trial judge's finding.

## C. THE PERSONAL PROPERTY

The trial court found that the personal property awarded to Mr. Jennette was worth $45,000 more than the personal property awarded to Mrs. Jennette. Taking into account the fact that Mr. Jennette acquired much of the property after the separation, the court ordered him to pay Mrs. Jennette $10,000 as an equitable division of the personal property.

Mr. Jennette insists that the court overvalued the property awarded to him. However, Mr. Jennette's contention is undermined by the same problem

of credibility. Less than two months before the final hearing in this case, he filed the financial statement showing his personal property having a value of $100,900. At the trial he testified that his personal property was worth approximately $31,000.

Mrs. Jennette testified that the value of the few household goods she retained, plus two used automobiles, amounted to approximately $9,500. The value of Mr. Jennette's personal property would be $45,000 plus $9,500 or $54,500. We think the $10,000 awarded to Mrs. Jennette represented a fair adjustment of the parties' interests in the personal property.

## III. CHILD SUPPORT

Mr. Jennette complains about the amount of child support he is ordered to pay. He insists that the amount should have been based on his salary of $41,600 rather than on an imputed income of $72,120. The trial judge, however, was very specific about how he arrived at the income figure. He took the income from the financial statement – filed just two months before the hearing – that showed Mr. Jennette getting $16,300 in rental income and $20,000 in partnership income in addition to his salary. The judge then deducted $5,750 from the rental income for mortgage payments and taxes. The total came to $72,120.

It is hard to fault the judge's calculations. It was in connection with the income figures that the trial judge found Mr. Jennette to be an unreliable witness. The court also had proof in the record of Mr. Jennette's style of living, his gun collection, other expensive habits, and his sudden climb to a position of affluence. These factors indicate that Mr. Jennette has more income that just his

salary. We do not think the evidence preponderates against the trial judge's finding. *See* Rule 13(d), Tenn. R. App. Proc.

## IV. ATTORNEYS FEES ON APPEAL

Mrs. Jennette asks the court to award her her attorney's fees for having to defend the trial court's order on appeal. An award of fees to her might be justified on the basis of her defense of the child support award. We have held that the children are entitled to have the father pay attorney's fees in a petition for support brought on their behalf by the mother. *Graham v. Graham*, 208 S.W.2d 987 (1918); *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989); *Ragan v. Ragan*, 858 S.W.2d 332 (Tenn. App. 1993); *see* Tenn. Code Ann. § 36–5-103(c). We are persuaded that this is such a case. On remand the trial court shall fix a fee for Mrs. Jennette in the amount of one-half of the reasonable fees incurred on appeal.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Davidson County for further proceedings in accordance with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL ,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE